UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENVIRONMENTAL PACKAGING TECHNOLOGIES, LTD, ET AL., | § § § | |
| Plaintiffs. | § § § | |
| VS. | § § | CIVIL ACTION NO. 4:18–CV–00240 |
| ARCH INSURANCE COMPANY, ET AL., | § § § § | |
| Defendants. | § § | |

## ORDER

This is an insurance coverage dispute arising out of an underlying state court action in which a multi-million-dollar judgment was entered against Environmental Packaging Technologies, Ltd. ("EPT"). Plaintiffs have sued EPT's insurers, Arch Insurance Company and National Union Fire Insurance Company of Pittsburgh ("National Union"), for allegedly failing to honor the obligations and related legal duties arising out of their respective insurance policies.

Before me presently is a discovery dispute between Plaintiffs and National Union concerning the applicability of the work-product privilege to a single document National Union contends is privileged. The document at the center of this dispute is a three-page Digest Report which National Union produced in redacted form in August 2018. The Digest Report provides various claim history, policy information, and reserve data. In a December 2, 2019 discovery dispute letter directed to the court, Plaintiffs argued that the Digest Report was not protected from disclosure by the work-product privilege and

requested that the document be produced in unredacted form. United States District Judge George C. Hanks, Jr. held a telephonic hearing on January 7, 2020, to address several outstanding discovery issues, including the Digest Report, and he asked for additional briefing on the claims of privilege. On January 14, 2020, the day the supplemental briefing was due, National Union sent Plaintiffs a letter stating that the Digest Report had been inadvertently produced. The letter further claimed that the entirety of the Digest Report is protected from disclosure by the work-product privilege and requested that Plaintiffs destroy all copies in their possession.

Recently, this case has been transferred to me to handle all pretrial matters. I have carefully analyzed the briefing on the work-product privilege, read the cases cited by both sides in support of their respective positions, and reviewed *in camera* the Digest Report—both in clean form and redacted form. For the reasons outlined below, I conclude that National Union has not met its burden to establish that the work-product privilege applies to the Digest Report.

### THE APPLICABILITY OF THE WORK-PRODUCT PRIVILEGE

The work-product doctrine first appeared in 1947 when the United States Supreme Court decided *Hickman v. Taylor*, 329 U.S. 495 (1947). The Supreme Court's *Hickman* decision served as the authority for work-product protection for over two decades. Then, in 1970, the work-product doctrine was codified in Federal Rule of Civil Procedure 26(b)(3). Today, the rule provides: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another

party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3)(A).

The mere allegation that a document or group of documents constitutes work-product is insufficient. Instead, the burden is on the party who seeks work-product protection to show that the materials at issue were prepared by its representative in anticipation of litigation or for trial. *See Hodges, Grant & Kaufman v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985). To assert work-product privilege, the party resisting discovery must show: "(1) the materials sought are documents or tangible things; (2) the materials sought were prepared in anticipation of litigation or for trial; (3) the materials were prepared by or for a party's representative; [and] (4) if the party seeks to show that the material is opinion work product, that party must show that the material contains the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party." *SEC v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2006).

This lawsuit was filed on January 25, 2018. The Digest Report was generated on February 26, 2018. Because the Digest Report was created after this lawsuit had commenced, National Union asserts that the document is automatically protected from disclosure by the work-product privilege. I disagree. To show that a document was created in anticipation of litigation, a party must do more than simply establish that the document was created after a certain date. As the advisory committee notes to Rule 26(b)(3) make clear, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes

3

are not under the qualified immunity provided by this subdivision." FED. R. CIV. P. 26(b)(3) advisory committee's note to 1970 amendment. "The work product doctrine focuses only on materials assembled and brought into being in anticipation of litigation. Excluded from work product materials . . . are materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation." *U.S. v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982) (internal quotation marks and citation omitted).

> Factors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance. If the document would have been created regardless of whether litigation was expected to ensue, the document is deemed to have been created in the ordinary course of business and not in anticipation of litigation.

*Elec. Data Sys. Corp. v. Steingraber*, No. 4:02-cv-225, 2003 WL 21653414, at *5 (E.D. Tex. July 9, 2003) (citation omitted).

Here, National Union has presented no evidence indicating that "the primary motivating purpose behind the creation of the [Digest Report] was to aid in possible future litigation." *El Paso Co.*, 682 F.2d at 542 (quotation marks and citation omitted). The declaration provided to the court in support of the assertion of the work-product privilege merely states that the document was created after the inception of this case. This is not enough. *See Orchestrate HR, Inc. v. Trombetta*, No. 3:13-CV-2110-P, 2014 WL 884742, at *2 (N.D. Tex. Feb. 27, 2014) ("The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the documents constitute work product."). The declaration does not provide any

4

indication who created the document, why the document was created, or whether the document would have been generated in the ordinary course of business irrespective of the litigation. Although National Union has the burden of establishing that a document is protected by the work-product privilege, it is noteworthy that only Plaintiffs present me with any evidence concerning how the Digest Reports are created. That evidence is in the form of deposition testimony from National Union's corporate representative, Gene Domanico. He testified that Digest Reports are routinely prepared for supervisors of a claim as part of the claims file and contain content downloaded from the claims system. This strongly suggests that the Digest Report would have been created even if there was no lawsuit. Because National Union has failed to satisfy its burden to show that the Digest Report was created in anticipation of litigation, I find the work-product privilege does not protect the document from disclosure.

## RELEVANCE OF RESERVE INFORMATION

There is one other issue I need to address: that is, whether I should order the production of an unredacted copy of the Digest Report. Before clawing back the Digest Report, National Union had redacted information on the document reflecting National Union's reserves in connection with the underlying state court lawsuit. Reserves are an insurance company's best estimate of the eventual cost of the claim to the company, including both the cost of indemnifying the insured and the cost of adjusting the claim. *See Maryland Cas. Co. v. United States*, 251 U.S. 342, 350 (1920). National Union argues that such information is not relevant to the Texas Insurance Code claims brought

by Plaintiffs in this case. Plaintiffs vehemently disagree, noting that district courts within the Fifth Circuit routinely order the production of reserve information in similar cases.

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and allows a party to discover any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The federal rules "promote broad discovery so that all relevant evidence is disclosed as early as possible, making trial 'less a game of blind man's bluff and more a fair contest' . . . where each party can knowledgeably evaluate the strength of its evidence and chances of ultimate success." *Chaisson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993) (quoting *U.S. v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). In cases like this one alleging violations of the Texas Insurance Code for unfair and deceptive practices, establishment of loss reserves is highly relevant because it "could well belie a later claim that the insurer thought in good faith that there was no possibility of the claim falling within coverage." *Trinity E. Energy, LLC v. St. Paul Surplus Lines Ins. Co.*, No. 4:11-CV-814-Y, 2013 WL 12124022 at *2 (N.D. Tex. Mar. 8, 2013) (quotation marks and citation omitted). *See also Westheimer Regency I, LP v. Great Lakes Reinsurance (UK) SE*, No. 5:18-cv-14-OLG, 2018 WL 7198643, at *3 (W.D. Tex. Aug. 20, 2018) (holding reserves information relevant and discoverable); *Shaw v. Zurich Am. Ins. Co.*, No. 2:12-CV-00797-JRG, 2014 WL 2891904, at *2 (E.D. Tex. Jun. 26, 2014) ("The Court finds that information about [the insurer's] reserves is relevant and discoverable and was improperly withheld."); *Culbertson v. Shelter Mut. Ins. Co.*, No. 97-1969, 1998 WL 743592, at *1 (E.D. La. Oct. 21, 1998) (Loss reserve information "may be relevant to the

6

good or bad faith of defendant in denying the claim because it may demonstrate or lead to admissible evidence with respect to the thoroughness with which defendant investigated and considered plaintiff's . . . claim."). I, therefore, reject National Union's effort to withhold reserve data, finding that such information is both relevant and discoverable. National Union is ordered to produce an unredacted copy of the Digest Report within five business days.

Signed in Houston, Texas this 4th day March, 2020.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE