United States District Court
Southern District of Texas
**ENTERED**
June 11, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENVIRONMENTAL PACKAGING TECHNOLOGIES, LTD., ET AL., | § § § | |
| Plaintiffs. | § § | |
| VS. | § § | CIVIL ACTION NO. 4:18–CV–00240 |
| ARCH INSURANCE COMPANY, ET AL., | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

Before me is Defendant National Union Fire Insurance Company of Pittsburgh, Pa.'s Motion for Summary Judgment (Dkt. 90), Defendant Arch Insurance Company's Motion for Summary Judgment (Dkt. 91), and Plaintiffs' Motion for Partial Summary Judgment (Dkt. 92). For the reasons explained below, I recommend that Defendant National Union Fire Insurance Company of Pittsburgh, Pa.'s Motion for Summary Judgment (Dkt. 90) be **GRANTED**, Defendant Arch Insurance Company's Motion for Summary Judgment (Dkt. 91) be **GRANTED**, and Plaintiffs' Motion for Partial Summary Judgment (Dkt. 92) be **GRANTED in part and DENIED in part**.

## BACKGROUND

This lawsuit arises out of an insurance coverage dispute between Plaintiffs, Environmental Packaging Technologies, Ltd. ("EPT Ltd.") and Trevor Griffiths ("Griffiths") (collectively, "Plaintiffs"), and Defendants, Arch Insurance Company

("Arch") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union").

## A.   THE UNDERLYING LAWSUIT

In 2004, Griffiths served as a boat captain, piloting a yacht owned by Tatiana Golovina ("Golovina").  As a result of their interactions, Griffiths developed a friendship with Golovina and her business associate, David Michael Sims ("Sims").

Sometime around 2005, Golovina and Sims told Griffiths they were planning to start a company—EPT Ltd.—to make Flexitanks, a product used to ship bulk liquids in shipping containers.  After hearing the sales pitch, Griffiths invested $150,000, depositing the money directly into Golovina's bank account.  Golovina subsequently created EPT Ltd. in Hong Kong and used Griffiths's investment to develop products sold by EPT Ltd. Although Griffiths was supposed to gain an ownership interest in EPT Ltd., he never received any shares.

On August 8, 2011, Golovina created a new entity: Environmental Packaging Technologies, Inc. ("EPT Inc.").  On August 12, 2011, without any notice to Griffiths, EPT Inc. as buyer, EPT Ltd. as seller, and Golovina "as principal stockholder, directly or indirectly, of Seller," executed an Asset Purchase Agreement.  Dkt. 100 at 56.  Thereafter, EPT Inc. became the owner of all of EPT Ltd.'s assets.

After EPT Ltd.'s reorganization, Griffiths raised questions about why he never received shares of EPT Ltd. and demanded comparable shares in EPT Inc.  Golovina and Sims promised to make it right, indicating that they would direct EPT Inc.'s lawyer to issue shares to Griffiths.  No shares were ever issued.

In April 2014, Griffiths sued Golovina, Sims, EPT Ltd., and EPT Inc. (collectively, "Underlying Suit Defendants") in Cause No. 2014-18161, in the 270th Judicial District Court of Harris County, Texas, for fraud, breach of contract, conspiracy, breach of fiduciary duty, and aiding and abetting/joint tortfeasor liability (the "Underlying Suit"). While the Underlying Suit was ongoing, the Underlying Suit Defendants sought to obtain coverage from their insurers, Arch[1] and National Union.[2]  Arch and National Union both denied coverage.

Following a favorable jury verdict in May 2016, Griffiths obtained a final judgment in the Underlying Suit against Golovina, Sims, EPT Ltd., and EPT Inc. (the "Final Judgment").  The Final Judgment found fraud (as to Golovina, EPT Ltd., and EPT Inc.); breach of contract (as to all Underlying Suit Defendants); and breach of fiduciary duty (as to Golovina, Sims, and EPT Ltd.,).

After obtaining the judgment, Griffiths agreed with the Underlying Suit Defendants to resolve the Underlying Suit.  As a part of that agreement, EPT Inc. paid Griffiths $290,000.  Griffiths also received 100 percent ownership of EPT Ltd., and the Underlying Suit Defendants agreed not to oppose a motion for turnover of insurance claims to Griffiths.

---

[1] In November 2010, Arch issued policy PCDOO40963-00 (the "Arch Policy") to EPT Ltd.  The Arch Policy includes a "Directors, Officers, & Organization Liability Coverage Part."  Dkt. 93-1 at 21.  The Arch Policy is a claims-made policy and applies to a claim made during the Policy Period.  The Policy Period is from October 19, 2010 to November 15, 2017.

[2] National Union issued PrivateEdge Plus, Policy No. 01-613-73-12 (the "National Union Policy") to EPT Inc., from the period of November 23, 2013 to December 4, 2014.  The National Union Policy includes a "Directors, Officers and Private Company Liability Insurance" part.  Dkt. 90-7 at 42.

Subsequently, the state trial court entered a turnover order granting turnover of Golovina, Sims, and EPT Inc.'s insurance claims.

In sum, at the conclusion of the Underlying Suit, Griffiths became the owner of EPT Ltd. and stepped into the shoes of the Underlying Suit Defendants for purposes of pursuing claims against their insurers, Arch and National Union.

## B.    THIS LAWSUIT

Due to Griffiths's success in the Underlying Suit, Plaintiffs now seek to hold the Underlying Suit Defendants' insurers, Arch and National Union, liable for denying coverage of the Underlying Suit.  Specifically, Plaintiffs believe Arch and National Union violated their duties to defend and indemnify.  Accordingly, Plaintiffs assert the following claims against the identified Defendants: breach of contract (Arch and National Union); breach of *Stowers* obligations (Arch); and violations of Chapters 541 and 542 of the Texas Insurance Code (Arch and National Union).  Plaintiffs also seek to recover their attorney's fees associated with the breach of contract and Texas Insurance Code claims.

Plaintiffs have moved for summary judgment on their claims, as well as on a counterclaim brought by Arch under Section 541.153 of the Texas Insurance Code. Meanwhile, Arch and National Union have moved for summary judgment on all of Plaintiffs' claims.   Arch and National Union primarily base their motions on certain exclusions contained in their respective policies.  I will consider Arch and National Union's motions first because these exclusions, if applicable, could be dispositive.  In the interest of clarity, I will separately address the specific facts, legal arguments, and law concerning each insurer below.

## APPLICABLE LEGAL STANDARDS

### A.   SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A genuine dispute of material fact does not exist unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quotation marks and citation omitted).  "The moving party . . . bears the initial responsibility of informing the district court of the basis for its motion." *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (internal quotation marks and citation omitted).  If "the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310–11 (5th Cir. 2017).   Once a party "meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Brandon*, 808 F.3d at 270.  The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.  [It] must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Id.* (internal quotation marks and citations omitted).  "In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 414 (5th Cir. 2018) (quotation marks and citation omitted).  "On cross-motions

for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

## B.   DUTY TO DEFEND

Texas courts follow the eight corners rule in determining whether an insurer has a duty to defend. *See Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012). "Under that rule, courts look to the facts alleged within the four corners of the pleadings, measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that could potentially be covered by the insurance policy." *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014). The factual allegations are considered without regard to their truth or falsity and all doubts regarding the duty to defend are resolved in the insured's favor. *See Zurich Am. Ins. Co. v. Nokia*, *Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). In reviewing the pleadings and making the foregoing determinations, courts look to the factual allegations showing the origin of the damages claimed, not to legal theories or conclusions. *See Evanston*, 370 S.W.3d at 380.

The insured has the initial burden to establish coverage under the policy. *See Ewing Constr. Co.*, 420 S.W.3d at 33. "If it does so, then to avoid liability the insurer must prove one of the policy's exclusions applies. If the insurer proves that an exclusion applies, the burden shifts back to the insured to establish that an exception to the exclusion restores coverage." *Id.* (citation omitted).

## C.   DUTY TO INDEMNIFY

In Texas, the duty to defend and the duty to indemnify are distinct duties.  *See Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).  "The duty to defend means the insurer will defend the insured in any lawsuit that alleges and seeks damages for an event potentially covered by the policy, while the duty to indemnify means the insurer will pay all covered claims and judgments against an insured." *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 252–53 (5th Cir. 2011) (internal quotation marks omitted).  "A court may determine that an insurer has no duty to indemnify when the insurer has no duty to defend and the same reasons that negate the duty to defend negate any possibility the insurer will ever have a duty to indemnify." *Courtland Custom Homes, Inc. v. Mid-Continent Cas. Co.*, 395 F. Supp. 2d 478, 483 (S.D. Tex. 2005) (internal quotation marks, brackets, and citation omitted).  *See also Vinings Ins. Co. v. Byrdson Servs., LLC*, No. 1:14-CV-525, 2016 WL 3584715, at *5 (E.D. Tex. June 17, 2016) ("[B]ecause [plaintiff] has no duty to defend, given the information presented, the possibility that [plaintiff] has any duty to indemnify is negated for the same reasons—because [the claims in the underlying suit] are excluded from coverage under the Policies.").  Indeed, a policy exclusion may negate both the duty to defend and the duty to indemnify.  *See, e.g., Markel Am. Ins. Co. v. Verbeek*, 657 F. App'x 305, 311 (5th Cir. 2016) (affirming grant of summary judgment on plaintiff's duty to indemnify when underlying action fell under policy exclusion).

## ARCH'S MOTION FOR SUMMARY JUDGMENT

As noted above, Plaintiffs have sued Arch for breach of contract, alleging that Arch "fail[ed] to provide [them with] coverage, indemnification[,] and a defense." Dkt. 41 at 52. Based on this alleged contractual breach, Plaintiffs also assert several extracontractual claims against Arch for breach of *Stowers* obligations and violations of Chapters 541 and 542 of the Texas Insurance Code. Arch contends that it is entitled to summary judgment on all of Plaintiffs' claims because the following policy exclusions apply: the fraud exclusion (the "Arch Fraud Exclusion"); the profits exclusion (the "Arch Profits Exclusion"); and the contract exclusion (the "Arch Contract Exclusion").[3]

Because the relevant exclusions, if applicable, could potentially exclude the Underlying Suit from coverage, thereby eviscerating the breach of contract claim, my analysis initially focuses on the exclusions. After I determine the applicability of the various exclusions, I will circle back to Plaintiffs' extracontractual claims.

To better understand the Arch Policy exclusions, I begin with the relevant definitions. Then I will separately address each exclusion.

### A.    THE ARCH POLICY DEFINITIONS

The Arch Policy defines relevant terms as follows:

> "**Claim**" means any: 1. written demand or notice for civil monetary damages or other civil non-monetary relief commenced by the **Insured's** receipt of such demand or notice; 2. civil proceeding . . . commenced by the service upon the **Insured** of a complaint, demand for arbitration, or similar pleading.

Dkt. 93-1 at 64.

---

[3] Arch makes several other arguments that I do not detail or reach.

"**Employee**" means any natural person whose labor or service was, is or shall be engaged and directed by any **Insured Organization** [EPT Ltd.], including fulltime, part-time, seasonal, leased and temporary employees as well as volunteers.  **Employee** shall not include any **Independent Contractor**.

*Id*. at 22.

"**Executive**" means any natural person who was, is or shall be a duly elected or appointed: 1. director, officer, or member of the board of the managers or management committee of an **Insured Organization** [EPT Ltd.].

*Id*.

"**Insureds**" means any: 1. **Insured Organization** [EPT Ltd.]; or 2. **Insured Person** [Golovina and/or Sims].[4]

*Id.*

"**Insured Person**" means any: 1. **Executive**; or 2. **Employee**.

*Id.*

"**Loss**" means the amount that the **Insureds** [EPT Ltd., Golovina, and Sims] are legally obligated to pay resulting from a **Claim**, including, without limitation, damages, settlements, judgments, pre- and post-judgment interest, **Defense Costs**, and **Investigation Costs**.  **Loss** shall include punitive and exemplary damages and the multiple portion of any multiplied damage award where insurable by law.  The insurability of such damages shall be governed by the laws of any applicable jurisdiction that permits coverage of such damages.  **Loss** shall exclude any: . . . taxes, fines or penalties imposed by law; . . . matters that are uninsurable under the law pursuant to which this Policy shall be construed; . . . amount for which the **Insureds** [EPT Ltd., Golovina, and Sims] are not financially liable or for which the claimants are without legal recourse to the **Insureds** [EPT Ltd., Golovina, and Sims]; or . . . non-monetary relief.

*Id.* at 23, 65.

---

[4] In my view, Golovina and Sims clearly qualify as Insured Persons given the Arch Policy's definitions of Executive and Employee.  Arch does not dispute EPT Ltd., Golovina, and Sims' status as Insureds.

"**Non-Indemnifiable Loss**" means any **Loss** incurred by **Insured Persons** [Golovina and/or Sims] that all **Insured Organizations** [EPT Ltd.] cannot indemnify because of: 1. legal prohibition; or 2. **Insolvency**.  In determining **Non-Indemnifiable Loss**, all **Insured Organizations** [EPT Ltd.] shall be deemed to provide indemnification to the **Insured Persons** [Golovina and/or Sims] to the fullest extent permitted or required by law.

*Id.* at 8.

"**Wrongful Act**" means any actual or alleged: 1. act, error, omission, misstatement, misleading statement, neglect or breach of duty by **Insured Persons** [Golovina and/or  Sims] in their capacity as such . . . or, with respect to Insuring Agreement C, by any **Insured Organization** [EPT Ltd.]; or 2. matter claimed against an **Insured Person** [Golovina and/or  Sims] solely by reason of their serving in such capacity.

*Id.* at 23.

## B.   THE ARCH FRAUD EXCLUSION

The Arch Fraud Exclusion provides:

"[Arch] shall not pay **Loss** for any **Claim** against an **Insured** [EPT Ltd., Golovina, or Sims]: . . . arising from, based upon, or attributable to any deliberately fraudulent or criminal act or omission or any willful violation of law by such **Insured** [EPT Ltd., Golovina, or Sims] if a judgment or other final adjudication in such **Claim** or another proceeding establishes that such act, omission or violation occurred."

Dkt 93-1 at 24, 26.  Also relevant to the Arch Fraud Exclusion, the Arch Policy provides:

[N]o **Wrongful Act** of any **Insured Person** [Golovina or Sims] shall be imputed to any other **Insured Person**; and . . . only a **Wrongful Act** by a past, present or future chief executive officer, chief operating officer or chief financial officer of any **Insured Organization** [EPT Ltd.] shall be imputed to an **Insured Organization** [EPT Ltd.].

*Id.* at 66.  Importantly, "Claim" is broadly defined to include the entire Underlying Suit—not just particular causes of action within the Underlying Suit.  Further, "Loss" includes defense costs and judgments, meaning it includes all defense and indemnity obligations.

Additionally, the Arch Fraud Exclusion references "Insured," so it is potentially applicable to Golovina, Sims, and EPT Ltd.

Taken together, the plain language of the Arch Fraud Exclusion, in conjunction with the relevant policy definitions and other provisions, make clear that if the Final Judgment in the Underlying Suit contains a finding that an "Insured" engaged in deliberate fraud, Arch has no defense or indemnity obligation as to such "Insured." Thus, the application of the Fraud Exclusion turns on the Final Judgment in the Underlying Suit, and I must determine whether the Final Judgment contains a finding of deliberate fraud as to any of the "Insureds."

Arch contends that the Final Judgment in the Underlying Suit clearly contains a relevant finding: "Defendants EPT, Inc., EPT, Ltd., and Golovina each committed common law fraud against Plaintiff." Dkt. 91-18 at 3. Arch also argues that the Final Judgment expressly incorporates by reference "[t]he verdict and all answers to juror questions." *Id.* With respect to the common law fraud finding, the jury considered and answered the following question:

### QUESTION 7

QUESTION 7:   Which of the Defendants, if any, committed common law fraud against Trevor Griffiths?

Common law fraud occurs when—

1. a party makes a material misrepresentation, and
2. the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and
3. the misrepresentation is made with the intention that it should be acted on by the other party, and
4. the other party relies on the misrepresentation and thereby suffers injury.

or

1. a party fails to disclose a material fact within the knowledge of that party, and
2. the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, and
3. the party intends to induce the other party to take some action or refrain from acting by failing to disclose the fact, and
4. the other party suffers injury as a result of acting or refraining from acting without knowledge of the undisclosed fact.

"Misrepresentation" means any of the following:

(a) a false statement of fact; or
(b) a promise of future performance made with an intent, at the time the promise was made, not to perform as promised; or
(c) A statement of opinion based on a false statement of fact; or
(d) A statement of opinion that the maker knows to be false; or
(e) An expression of opinion that is false, made by one who has, or purports to have, special knowledge of the subject matter of the opinion.

"Special knowledge" means knowledge or information superior to that possessed by the other Party and to which the other Party did not have equal access.

Answer "Yes" or "No:"

| | | | |
|---|---|---|---|
| Sims | No | Golovina | yes |
| EPT Ltd. | yes | EPT Inc. | yes |

Dkt. 91-17 at 15.

In Arch's view, the common law fraud finding amounts to a finding of deliberate fraud. Thus, Arch argues that because the Arch Fraud Exclusion applies, it has no defense or indemnity obligation as to two of its "Insureds," EPT Ltd. and Golovina. Plaintiffs disagree, arguing that the common law fraud finding does not equate to deliberate fraud because it could well be based on reckless misconduct.

For my purposes, the key inquiry is determining what exactly the Arch Policy means when it references a "deliberately fraudulent . . . act or omission." Dkt. 93-1 at 24, 26. The

Arch Policy does not define "deliberately," so I must apply the term's ordinary meaning. *See Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 291 (5th Cir. 2005) ("The undefined terms in an insurance policy are to be given their ordinary and generally accepted meaning unless the policy shows that the words were meant in a technical or different sense."). Common dictionary definitions reveal that the plain meaning of "deliberately" is intentional or intentionally. *See* "Deliberately," Oxford English Dictionary Online, https://www.oed.com/view/Entry/49348?redirectedFrom=deliberately#eid (last visited June 1, 2020) (defining "deliberately" as: "[o]riginally: with careful thought or consideration; not hastily or impulsively. Now chiefly: on purpose rather than by accident; intentionally."); "Deliberately," Merriam Webster Online, https://www.merriam-webster.com/dictionary/deliberately (last visited June 1, 2020) (defining "deliberately" as "with full awareness of what one is doing: in a way that is intended or planned"); *Deliberate*, Black's Law Dictionary (11th ed. 2019) (defining "deliberate" as: "1. Intentional; premeditated; fully considered. 2. Unimpulsive; slow in deciding."). Thus, the real question I must answer is whether a finding of common law fraud amounts to intentional fraud? The answer to this question is clearly "Yes."

To begin, Texas courts have long recognized that "[f]raud is an intentional tort." *Dresser Indus. v. Underwriters at Lloyd's, London*, 106 S.W.3d 767, 774 (Tex. App.—Texarkana 2003, pet. denied). *See, e.g., Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 921 (Tex. 2010) (explaining that "[a]lthough similar in their essential elements, fraud is more difficult to prove than negligent misrepresentation **due to the added element of intent to deceive**") (internal quotation marks and citation omitted)

(emphasis added); *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 219 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (analyzing an unrelated statute and explaining that the Texas "Legislature has not waived immunity with respect to the intentional tort of fraud"). In my view, this fact clearly means that a finding of common law fraud necessarily constitutes a finding of intentional/deliberate fraud.

Plaintiffs disagree, arguing instead that the jury's common law fraud finding could be based on a determination "that Golovina, EPT Ltd., and EPT Inc. made material misrepresentations 'recklessly.'" Dkt. 128 at 30 (citation omitted). To support their position, Plaintiffs first point to the second element of the common law fraud instruction, which states "the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion." Dkt. 91-17 at 15. After latching onto the word "recklessly," Plaintiffs then cite to *National Union Fire Insurance Company of Pittsburgh v. Willis*, 139 F. Supp. 2d 827, 834 (S.D. Tex. 2001), for the proposition that a reckless act is not necessarily equivalent to a deliberate act. *See* Dkt. 128 at 30. With these predicates laid out, Plaintiffs contend that "the common law fraud finding in the Final Judgment is not a necessary adjudication of deliberate or willful misconduct and therefore the [Arch Fraud Exclusion] cannot be held to bar coverage." *Id.* I find this argument unpersuasive.

To begin, I reject Plaintiffs' reliance on *Willis*. Although the *Willis* court considered "certain misrepresentations and promises," it did not do so in the context of a common law fraud jury finding. *Willis*, 139 F. Supp. 2d at 834. This distinction matters because a common law fraud finding necessarily requires a deliberately/intentionally fraudulent act.

Common law fraud requires proof of several elements. *See DiBello v. Charlie Thomas Ford, Ltd.*, 288 S.W.3d 118, 122 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("The elements of common law fraud are: (1) a material representation that was false when made; (2) when the representation was made, the speaker knew it was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the speaker made the representation with the intent that the other party should act upon it; (4) the party actually and justifiably relied on the representation; and (5) thereby suffered injury."). The second element, on which Plaintiffs focus, concerns the knowledge possessed by the individual who shares a misrepresentation. As succinctly explained by the Texas Supreme Court, "a representation is recklessly made if the speaker knows that he does not have sufficient information or basis to support it . . . or if he realizes that he does not know whether or not the statement is true." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 527 (Tex. 1998) (citation omitted). In either case, the misrepresentation is fraudulent. *See id.* at 526 ("A statement is . . . fraudulent [if] the speaker knew it was false when made or the speaker made it recklessly without knowledge of the truth.").

The third element, which Plaintiffs ignore altogether, requires a finding that the misrepresentation at issue "[was] made with the intention that it should be acted on by the other party." Dkt. 91-17 at 15. Plainly stated, the second and third elements of a common law fraud claim combine to reveal the intentional/deliberate nature of an individual's conduct. This is illustrated by the court's decision in *Forgetaboutit, Inc. v. Warner*, No. 09-04-503 CV, 2005 WL 3219578 (Tex. App.—Beaumont Dec. 1, 2005, no pet.).

In *Forgetaboutit*, the court was tasked with determining whether a jury's findings were contradictory on a controlling factual issue concerning common law fraud and a claim brought under the Texas Deceptive Trade Practices Act ("DTPA"). *See id.* at *1. The *Forgetaboutit* court described the controversy as follows:

> The jury found the representation that the machine would work anywhere was made fraudulently. However, according to the jury's verdict on the DTPA claim, the same representation was not made intentionally or knowingly. . . . The fraud question, as presented to the jury, had two possible scienter elements: the representation was made with knowledge of falsity, or the representation was recklessly made without any knowledge of the truth and as a positive assertion. Under the "reckless" standard, the speaker must have known he did not have sufficient information or basis to make the statement, but made it anyway as a positive assertion and with the intent it be relied upon.

*Id.* at *2. In resolving the controversy, the *Forgetaboutit* court explained that it "fail[ed] to see how the misrepresentation," which was the basis for the common law fraud finding as well as the DTPA finding, "could have been made fraudulently and yet unintentionally and unknowingly." *Id.* Based on this inconsistency, the court "reverse[d] the trial court's judgment and remand[ed] the case to the trial court for further proceedings." *Id.* at *3. In my view, *Forgetaboutit* clearly illustrates that the reckless standard, as it relates to common law fraud, merely describes another variation of intentionally/deliberately fraudulent conduct.[5]

---

[5] Many years ago, a federal district court construing common law fraud in the state of Pennsylvania explained the distinction as follows:

> [F]alsity may consist in making representation of a material fact knowing it to be false, or in making a representation which is untrue without knowledge whether it is true or false and by coupling with the representation an express or implied affirmation that it is known to be true of personal knowledge. **This is not a relaxing of any knowledge requirement but merely an application of the**

In sum, I find that the Final Judgment contains a finding of deliberate fraud, the Arch Fraud Exception applies to EPT Ltd. and Golovina, and Arch has no defense or indemnity obligation as to EPT Ltd. and Golovina.

## C.   THE ARCH PROFITS EXCLUSION

The Arch Profits Exclusion provides:

> [Arch] shall not pay **Loss** for any **Claim** against an **Insured** [EPT Ltd., Golovina, or Sims]: . . . arising from, based upon, or attributable to the gaining, in fact, of any personal profit, remuneration or advantage to which such **Insured** [EPT Ltd., Golovina, or Sims] is not legally entitled if a final adjudication in such **Claim** establishes that such profit, remuneration or advantage occurred.

Dkt. 93-1 at 24, 26, 66.  Thus, for the Arch Profits Exclusion to apply to a given "Insured," the Final Judgment, which incorporates the jury verdict, must contain findings that said "Insured": (1) gained any personal profit, remuneration, or advantage; (2) to which said insured was not legally entitled.  In addition, like the Arch Fraud Exclusion, the Arch Profits Exclusion distinguishes between each "Insured Persons" wrongful conduct; is potentially applicable to EPT Ltd., Golovina, and Sims.  And if the exclusion applies to an "Insured," Arch has no defense or indemnity obligation as to such "Insured."

The jury verdict contains several findings relevant to the Arch Profits Exclusion:

---

> **knowledge requirement to a particular kind of deliberately fraudulent conduct**.

*Coleco Indus., Inc. v. Berman*, 423 F. Supp. 275, 297 (E.D. Pa. 1976) (citation omitted) (emphasis added).  Although the *Berman* court was not interpreting Texas law, I find its explanation quite instructive and consistent with my interpretation of Texas law.

## QUESTION 1

QUESTION 1:      Which of the following Defendants, if any, had a relationship of trust and confidence with Trevor Griffiths at the time of the transaction?

A relationship of trust and confidence existed if Trevor Griffiths justifiably placed trust and confidence in the defendants to act in Trevor Griffiths's best interest. Trevor Griffiths's subjective trust and feelings alone do not justify transforming arm's-length dealings into a relationship of trust and confidence.

Answer "Yes" or "No."

Sims _____ Yes _____

Golovina _____ Yes _____

EPT Ltd. _____ Yes _____

EPT Inc. _____ No _____

Dkt. 91-17 at 9.

## QUESTION 2

If you answered "Yes" to Question 1 regarding a defendant, answer the following questions regarding that defendant. Otherwise, do not answer the following questions regarding that defendant.

QUESTION 2:      Which of the Defendants, if any, benefitted or profited from the transaction with Trevor Griffiths?

Answer "Yes" or "No."

Sims _____ Yes _____

Golovina _____ Yes _____

EPT Ltd. _____ Yes _____

EPT Inc. _____ N/A _____

*Id.* at 10.

18

## QUESTION 3

If you answered "Yes" to Question 2 regarding a defendant, answer the following question regarding that defendant. If you answered "No" or did not answer Question 2 with respect to a particular defendant, do not answer the following questions regarding that defendant.

QUESTION 3:   Which of the Defendants, if any, complied with their fiduciary duties owed to Trevor Griffiths?

If a relationship of trust and confidence existed between them, the Defendants owed fiduciary duties to Trevor Griffiths.  To prove that they complied with their duties, Defendants must show—

1.  the transactions in question were fair and equitable to Trevor Griffiths; and

2.  they made reasonable use of the confidence that Trevor Griffiths placed in them; and

3.  they acted in the utmost good faith and exercised the most scrupulous honesty toward Trevor Griffiths; and

4.  they placed the interests of Trevor Griffiths before their own and did not use the advantage of their position to gain any benefit for themselves at the expense of Trevor Griffiths; and

5.  they fully and fairly disclosed all important information to Trevor Griffiths concerning the transactions.

Answer "Yes" or "No."

| | |
|---|---|
| Sims | No |
| Golovina | No |
| EPT Ltd. | No |
| EPT Inc. | N/A |

*Id.* at 11.

## QUESTION 14

Question 14:  Answer the following question regarding a defendant only if you answered "No" to Question 3 or "Yes" to Question 4 regarding that defendant. Otherwise, do not answer the following question regarding that defendant.

*Id.* at 34.[6]

> QUESTION 14:  What was the total value of the benefits obtained by Defendants from the procurement and use of Plaintiff's investment?
>
> Answer in dollars and cents, if any:
>
> Sims        $ 150k
>
> Golovina    $ 150k
>
> EPT Ltd.    $ 150k
>
> EPT Inc.    $ N/A

*Id.* at 23.

Taken together, these findings clearly demonstrate that the jury expressly found that EPT Ltd., Golovina, and Sims each: owed Griffiths fiduciary duties, breached those fiduciary duties, and benefitted or profited from breaching their fiduciary duties to the tune of $150,000 each.[7]  In my view, this alone clearly satisfies the first prong of the Arch Profits Exclusion.[8]

---

[6] There was a mistake in the charge submitted to the jury with respect to the predicates of Question 14.  *See id.* at 33–34.  The text I have included here, reflects the corrected predicate question that the trial court submitted to the jury after the jury flagged the issue.

[7] The Final Judgment succinctly states: "Defendants Sims, Golovina, and EPT[] Ltd. each obtained benefits worth $150,000 (collectively, a total of $450,000) from the procurement and use of Plaintiff's investment (Question 14)."  Dkt. 91-18 at 3.

[8] Moreover, in *Jarvis Christian College v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania*, the Fifth Circuit construed an insurance policy containing the following exclusion: "any claim arising out of the gaining in fact of any personal profit or advantage to which the Insured is not legally entitled."  197 F.3d 742, 747 (5th Cir. 1999) (quotation marks, footnote, and citation omitted).  The Fifth Circuit explained that "the term 'advantage' is broader than the term 'profit.'  The former does not mean a balance-sheet profit; rather, it encompasses any gain or benefit, such as an *opportunity* to make a profit but without responsibility to repay [a] loan."  *Id.*

The only remaining inquiry is whether EPT Ltd., Golovina, and Sims were legally entitled to such gain. The Fifth Circuit has explained that under Texas law, "a fiduciary is not legally entitled to any profit or advantage he gains as a result of a breach of duty or trust." *Jarvis*, 197 F.3d at 749. *See also TIG Specialty Ins. Co. v. Pinkmonkey.com, Inc.*, 375 F.3d 365, 370 (5th Cir. 2004) ("A defendant is not legally entitled to an advantage or profit resulting from his violation of law if he could be required to return such profit."). Based on this clearly applicable law, I find that the Arch Profits Exclusion applies.[9]

Accordingly, pursuant to the Arch Profits Exclusion, Arch has no defense or indemnity obligation as to EPT Ltd., Golovina, and Sims.[10]

\*\*\*

Once Arch established its burden of showing the applicability of the Arch Fraud Exclusion and Arch Profits Exclusion, the burden shifted back to Plaintiffs to show that an exception to the exclusions applies in order to bring their contractual claim back within coverage. Plaintiffs failed to meet their burden, providing no evidence that would raise a factual issue in this regard. Accordingly, Arch's motion for summary judgment should be **GRANTED** as to Plaintiffs' contractual claim because, based on the application of the

---

at 748–49 (footnote omitted). In this case, the Arch Profits Exclusion also incorporates the term "advantage." Thus, under *Jarvis*, I have no trouble concluding that Golovina, Sims, and EPT Ltd. enjoyed the opportunity to make a profit when they breached their fiduciary duties to Griffiths— i.e., they gained an advantage from breaching their fiduciary duties. This also satisfies the first prong of the Arch Profits Exclusion.

[9] In their response brief, Plaintiffs attempt to distinguish *Jarvis* and *TIG*. Given the clarity of the jury verdict and Final Judgment in this case, I am not persuaded by any of Plaintiffs' arguments.

[10] Because the Arch Fraud Exclusion and Arch Profits Exclusion together apply to all of Arch's "Insureds," I need not reach the Arch Contracts Exclusion.

Arch Fraud Exclusion and Arch Profits Exclusion, Arch has no defense or indemnity obligation as to EPT Ltd., Golovina, and Sims.

**D.      EXTRACONTRACTUAL CLAIMS**

As mentioned above, Plaintiffs have also asserted extracontractual claims against Arch for violations of *Stowers* obligations and violations of the Texas Insurance Code. Because I have determined that there was no coverage in this case due to the Arch Fraud Exclusion and Arch Profits Exclusion, Plaintiffs' extracontractual claims must fail as a matter of law. *See Nat'l Fire Ins. Co. of Hartford v. State & Cty. Mut. Fire Ins. Co.*, No. 01-11-00176-CV, 2012 WL 3776422, at \*7 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, no pet.) ("Because there was no coverage in this case, [Plaintiff's] claims [for violations of the Texas Insurance Code or for breach of the *Stowers* duty] are not viable.") (collecting cases); *Bilotto v. Allied Prop. & Cas. Ins. Co.*, 79 F. Supp. 3d 660, 675 (W.D. Tex. 2015) ("[P]laintiff's Texas Insurance Code . . . claim[] also fail[s] in the absence of a viable contractual claim.").

**NATIONAL UNION'S MOTION FOR SUMMARY JUDGMENT**

As was the case with Arch, Plaintiffs sued National Union for breach of contract, alleging that National Union "fail[ed] to provide [them with] coverage, indemnification[,] and a defense." Dkt. 41 at 53. Based on this alleged contractual breach, Plaintiffs also asserted extracontractual claims for violations of Chapters 541 and 542 of the Texas Insurance Code, and they seek attorney's fees based on the breach of contract and breach of the Texas Insurance Code. National Union contends that it is entitled to summary judgment on all of Plaintiffs' claims because several of its policy exclusions apply.

Specifically, National Union argues that the fraud/dishonesty exclusion (the "National Union Fraud Exclusion"), profits/advantage exclusion (the "National Union Profits Exclusion"), and prior acts exclusion (the "National Union Prior Acts Exclusion") apply.[11] Because the relevant exclusions doom Plaintiffs' breach of contract claim, I will first focus on the exclusions. After I determine the applicability of the various exclusions, I will address Plaintiffs' extracontractual claims.

To better understand the National Union Policy exclusions, I begin with the relevant definitions. Then, I will separately address each exclusion.

## A.   THE NATIONAL UNION POLICY DEFINITIONS

The National Union Policy defines relevant terms, in pertinent part, as follows:

> "**Claim**" means: . . . a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non- monetary relief which is commenced by . . . service of a complaint or similar pleading . . . .

Dkt. 90-7 at 43.

> **"Company"** means the **Named Entity** [EPT Inc.] and any **Subsidiary** thereof.

*Id.* at 13.

> "**Defense Costs**" means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond), resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against an **Insured** [EPT Inc., Golovina, and/or Sims]**,** but excluding compensation of any **Individual Insured. Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured** [EPT Inc., Golovina, and/or Sims]."

---

[11] National Union makes several other arguments not related to the exclusions. Because I ultimately find certain of the exclusions applicable, I do not detail or reach those other arguments.

*Id.* at 44.

> "**Employee**" means any past, present or future employee, other than an **Executive** of a **Company**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, volunteer, seasonal and temporary employee.

*Id.*

> "**Executive**" means: . . . any past, present or future duly elected or appointed director, officer, management committee member or member of the Board of Managers . . . .

*Id.*

> "**Individual Insured**" means any: . . . **Executive** of a **Company**; . . . [or] Employee of a Company . . . .

*Id.* at 45.

> "**Insured**" means: . . . an **Individual Insured** [Golovina and/or Sims]; or . . . a **Company** [EPT Inc.].[12]

*Id.*

> "**Loss**" means damages, judgments, settlements, pre-judgment and post-judgment interest, **Crisis Management Loss** and **Defense Costs**; provided, however, **Loss** shall not include: (i) civil or criminal fines or penalties imposed by law; (ii) taxes; (iii) any amounts for which an **Insured** [EPT Inc., Golovina, and/or  Sims] is not financially liable or which are without legal recourse to an **Insured** [EPT Inc., Golovina, and/or Sims]; or (iv) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. **Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (u)(i) through (u)(iv) above of this Definition, subject to the other terms, conditions and exclusions of this policy.

---

[12] National Union disputes whether Sims qualifies as an Insured under its policy, arguing that Sims "was never an officer of EPT, Inc., nor a paid employee."  Dkt. 90 at 20.  This argument is unpersuasive because the definition of "employee" is broad enough to include seasonal and volunteer workers.  In my view, Sims satisfies that low bar.

**Loss** shall specifically include, subject to the other terms, conditions and exclusions of this **D&O Coverage Section**, including, but not limited to, exclusions 4(a) [National Union Profits Exclusion], 4(b) and 4(c) [National Union Fraud Exclusion] of this **D&O Coverage Section**, punitive, exemplary and multiple damages.

*Id.*

## B.   THE NATIONAL UNION FRAUD EXCLUSION

The National Union Fraud Exclusion provides:

[National Union] shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured** [EPT Inc., Golovina, and/or Sims]: . . . arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent or dishonest act, or any willful violation of any statute, rule or law, if any final adjudication establishes that such deliberate criminal, deliberate fraudulent or dishonest act or willful violation of statute, rule or law was committed.

Dkt. 90-7 at 47.

Under the National Union Policy, "Claim" is broadly defined to include an entire civil proceeding.  Here, that means the Underlying Suit, not just certain causes of action within that proceeding.  "Loss" is also broadly defined to include all defense and indemnity obligations.  Thus, like the Arch Fraud Exclusion, the National Union Fraud Exclusion applies if the Final Judgment in the Underlying Suit contains a finding that an "Insured" engaged in deliberate fraud.[13]  And, in that instance, National Union will have no defense or indemnity obligation as to such "Insured."  "Insureds" under the National Union Policy include EPT Inc., Golovina, and Sims.

---

[13] In the briefing and at oral argument, National Union also argued that the "dishonest act" language in the National Union Fraud Exclusion is applicable in this case.  I need not address that argument because I find the "deliberate fraudulent" language independently dispositive.

As detailed above in my discussion of the Arch Fraud Exclusion, the Final Judgment contains a finding of deliberate fraud as to two Insureds under the National Union Policy, namely EPT Inc. and Golovina. Thus, the National Union Fraud Exclusion applies, and National Union has no defense or indemnity obligation as to EPT Inc. and Golovina.

## C. THE NATIONAL UNION PROFITS EXCLUSION

The National Union Profits Exclusion provides:

> [National Union] shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured** [EPT Inc., Golovina, or Sims]: . . . arising out of, based upon or attributable to the gaining of any profit or advantage to which any final adjudication establishes the **Insured** [EPT Inc., Golovina, or Sims] was not legally entitled.

*Id.* Thus, for the National Union Profit Exclusion to apply to a given "Insured," the jury verdict and Final Judgment must contain findings that said "Insured:" (1) gained any personal profit or advantage (2) to which such insured was not legally entitled. And, as I explained above, "Loss" and "Claim" are broadly defined, such that if I determine the National Union Profit Exclusion applies to an "Insured," National Union will have no defense or indemnity obligation as to such "Insured."

The same jury verdict findings I described as relevant to the Arch Profit Exclusion above are equally relevant to the National Union Profit Exclusion. Indeed, I find that the National Union Profit Exclusion is applicable for all the same reasons that the Arch Profit Exclusion is applicable. The only noteworthy distinction is that one of National Union's Insureds was not found to have owed or breached any fiduciary duties to Griffiths. Consequently, the National Union Profit Exclusion applies to only Golovina and Sims.

Therefore, pursuant to the National Union Profits Exclusion, I find that National Union has no defense or indemnity obligation as to Golovina and Sims.[14]

\*\*\*

Once National Union established its burden of showing the applicability of the National Union Fraud Exclusion and National Union Profits Exclusion, the burden shifted back to Plaintiffs to show an exception to the exclusions applies in order to bring their contractual claim back within coverage.  Plaintiffs failed to meet their burden, providing no evidence that would raise a fact issue in this regard.  Accordingly, National Union's motion for summary judgment should be **GRANTED** as to Plaintiffs' contractual claim because, based on the application of the National Union Fraud Exclusion and National Union Profits Exclusion, National Union has no defense or indemnity obligation as to Sims, Golovina, and EPT Inc.

## D.   EXTRACONTRACTUAL CLAIMS

Plaintiffs have also asserted extracontractual claims for violations of the Texas Insurance Code, and they seek to recover attorney's fees based on National Union's alleged breach of contract and breach of the Texas Insurance Code.  Because I have determined that there was no coverage in this case due to the National Union Fraud Exclusion and National Union Profits Exclusion, Plaintiffs' extracontractual claims must fail as a matter

---

[14] Because the National Union Fraud Exclusion and National Union Profits Exclusion together apply to all of National Union's "Insureds," I need not reach the National Union Prior Acts Exclusion.

of law.  *See Bilotto*, 79 F. Supp. 3d at 675; *Nat'l Fire Ins. Co. of Hartford*, 2012 WL

3776422, at *7.

## REMAINING CONSIDERATIONS

In its answer, Arch raises a counterclaim against Plaintiffs for attorney's fees and

court costs under Section 541.153 of the Texas Insurance Code. *See* Dkt. 45 at 38.

Plaintiffs have moved for summary judgment on Arch's Section 541.153 claim, arguing

that:

> (1) . . . Plaintiffs' claims are not groundless, brought in bad faith, or for the
> purpose of harassment; in fact, Plaintiffs' claims are meritorious; (2) Arch
> can produce no competent summary judgment evidence to create any fact
> issue on its claim; and (3) Arch can produce no evidence to support any claim
> for damages caused by Plaintiffs' lawsuit against Arch.

Dkt. 92 at 44.  Arch responded to these arguments, while insisting that "a [Section] 541.153

determination is premature until the Court first dismisses Plaintiffs' [Section] 541 claims

on the merits." Dkt. 126 at 20.  Because I have recommended that summary judgment on

all of Plaintiffs claims be granted in favor of Arch and National Union, I will consider the

Section 541.153 claim.

Section 541.153 of the Texas Insurance Code provides that "[a] court shall award

to the defendant court costs and reasonable and necessary attorney's fees if the court finds

that an action under this subchapter is groundless and brought in bad faith or brought for

the purpose of harassment."  In other words, to recover attorney's fees and costs, Arch has

"must establish that the plaintiff's claims were (1) groundless and brought in bad faith, or

(2) groundless and brought for the purpose of harassment."  *Arizpe v. Principal Life Ins.*

*Co.*, No. 3:18-CV-1010-G, 2019 WL 4246598, at *2 (N.D. Tex. Sept. 6, 2019).  "The term

'groundless' . . . has the same meaning as 'groundless' under Rule 13 of the Texas Rules of Civil Procedure." *Metro Hosp. Partners, Ltd. v. Lexington Ins. Co.*, 84 F. Supp. 3d 553, 574–75 (S.D. Tex. 2015).  An action is "groundless" if it "has no basis in law or fact, and is not warranted by any good faith argument for extension, modification, or reversal of existing law." *Donwerth v. Preston II Chrysler–Dodge, Inc.*, 775 S.W.2d 634, 637 (Tex.1989) (citing TEX. R. CIV. P. 13).  A suit is brought in bad faith if it is "motivated by malicious or discriminatory purpose." *Riddick v. Quail Harbor Condominium Ass'n, Inc.*, 7 S.W.3d 663, 677 (Tex. App.—Houston [14th Dist.] 1999, no pet.).  Finally, "[w]hether an action is groundless, or brought in bad faith or for purposes of harassment is a question for the court, not the factfinder." *Texas Truck & Stuff, Inc. v. The Travelers Lloyds Ins. Co.*, No. A-12-CA-761-SS, 2013 WL 12090071, at *5 (W.D. Tex. Apr. 19, 2013).

In my view, Arch cannot meet its burden to show that it is entitled to attorney's fees under the statute it invokes.  As explained above, Plaintiffs' claims ultimately failed due to the application of various exclusions.  In determining the applicability of the exclusions, I engaged in a fairly complex analysis of the Arch Policy.  Although careful examination of the Arch Policy confirms this was correct, a colorable argument could be made to the contrary.  Based on this fact, I find that Plaintiffs claims were not so lacking in law or fact as to be "groundless."  Accordingly, I recommend that Arch's request for attorney's fees be denied and summary judgment be granted on this claim in Plaintiffs' favor.

## CONCLUSION

For the reasons detailed above, I recommend that Defendant National Union Fire Insurance Company of Pittsburgh, Pa.'s Motion for Summary Judgment (Dkt. 90) be **GRANTED**, Defendant Arch Insurance Company's Motion for Summary Judgment (Dkt. 91) be **GRANTED**, and Plaintiffs' Motion for Partial Summary Judgment (Dkt. 92) be **GRANTED in part and DENIED in part**.

To be clear, (1) summary judgment should be granted in favor of Arch and National Union on all of Plaintiffs' affirmative claims and (2) summary judgment should be granted in Plaintiffs' favor on Arch's claim for attorney's fees under Section 541.153 of the Texas Insurance Code.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED in Houston, Texas, this 11th day of June, 2020.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE